IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CHERYL L. ROSINE,                                    CV 07-6271-MA

          Plaintiff,                                 OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

          Defendant.

KATHRYN TASSINARI
Drew L. Johnson, PC
1700 Valley River Dr.
Eugene, OR 97401
(541) 434-6466

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1  - OPINION AND ORDER

DAPHNE BANAY
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2113

       Attorneys for Defendant

MARSH, Judge.

     Plaintiff Cheryl L. Rosine seeks judicial review of the final decision of the Commissioner denying her December 6, 2002, application for disability insurance benefits and supplemental security income benefits (benefits) under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f. Plaintiff alleges she is disabled by chronic head pain exacerbated by migraine triggers, neck, jaw, back, and knee pain, obesity, degenerative joint disease, depression, and a personality disorder.

     Plaintiff seeks an Order from this court reversing the Commissioner's decision and remanding the case for further development of the record.  For the following reasons, the court **REMANDS** this matter for further proceedings as set forth below.

### BACKGROUND

     This is the second disability application plaintiff has filed.  Her first disability application in August 2001 alleged substantially similar impairments.  In November 2002, as to the first application, a different Administrative Law Judge (ALJ)

found plaintiff was not disabled.  The Appeals Council affirmed that decision.  Plaintiff then filed an action in this court challenging that final decision, alleging the ALJ improperly rejected plaintiff's testimony on the ground she was not credible and improperly discounted the medical opinions of her treating physicians and psychiatrist.  In April 2004, the Hon. Garr M. King found the ALJ gave clear and convincing reasons for rejecting plaintiff's testimony based on her lack of credibility and her treating physicians' testimony based on substantial evidence.  Judge King noted an examining psychiatrist's conclusion that an MMPI test administered to plaintiff suggested a diagnosis of malingering.  Judge King also found there was substantial other evidence to support the ALJ's credibility finding regarding plaintiff's testimony and the ALJ's rejection of the opinions of plaintiff's treating physicians.  Accordingly, Judge King affirmed the final decision of the Commissioner denying plaintiff's claim for benefits.  Plaintiff did not appeal that ruling, but instead pursued a claim on her second disability application, which had been filed approximately 18 months before Judge King issued his opinion.

On June 27, 2006, after an evidentiary hearing, the ALJ issued a decision that plaintiff was not disabled.  The Appeals Council, however, remanded the matter for the ALJ to consider an

3  - OPINION AND ORDER

Oct 2000 opinion of an evaluating physician that plaintiff would have difficulty "finding gainful employment for very long," as well as all relevant medical opinion evidence and lay witness testimony.  The ALJ complied with the Order on Remand and on April 13, 2007, after a second evidentiary hearing, issued an opinion again finding plaintiff was not disabled.  On July 25, 2007, the Appeals Council denied plaintiff's request for review. The ALJ's decision, therefore, became the final decision of the Commissioner for purposes of review.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff suffers from severe impairments, including chondromalacia of the knee following arthroscopic chondroplasty, tendonitis, obesity, degenerative joint disease, epicondylitis (tennis elbow), and chronic pain

syndrome with migraine headaches.  She also suffers from carpal tunnel syndrome and degenerative disk disease of the cervical spine.  An impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment.  The ALJ found plaintiff has the residual functional capacity for a light level of physical exertion with lifting and carrying limited to 10 lbs frequently and 20 lbs occasionally, standing, walking and climbing stairs occasionally, no kneeling or squatting, and occasional fine gripping.

At Step Four, the ALJ found plaintiff is able to perform her past relevant work as an administrative assistant, office clerk, conference coordinator, and housing assistant.

Consistent with these findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

## ISSUES ON REVIEW

Plaintiff contends the ALJ erred in (1) failing to give clear and convincing reasons for rejecting plaintiff's testimony, (2) failing to give clear and convincing reasons for rejecting the disability opinion of plaintiff's treating doctor, Karen L.

Weisman, M.D., (3) finding plaintiff did not suffer from a severe mental impairment, and (4) failing to consider lay evidence. Based on these alleged errors, plaintiff seeks an Order reversing the Commissioner's final decision and remanding the case for an immediate payment of benefits.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996). To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. <u>Martinez v.</u>

6  - OPINION AND ORDER

Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation."  Andrews,
53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record.
DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty
to further develop the record, however is triggered only when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  Mayes v. Massanari,
276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert.
denied, 121 S. Ct. 628 (2000).  "If additional proceedings can
remedy defects in the original administrative proceeding, a
social security case should be remanded."  Lewin v. Schweiker,
654 F.2d 631, 635 (9th Cir. 1981).

### RELEVANT RECORD

**Plaintiff's Evidence**.

Plaintiff was 45 years old on the date of the Commissioner's
most recent final decision denying her claim for benefits.  She
has B.A. degrees in Social Policy and English.  Her past
employment includes both full and part-time work as an

administrative assistant, development assistant, conference coordinator, technical writer, housing assistance counselor, newspaper technician, and restaurant floor manager.  She last worked in 2000.

Plaintiff alleges she was unable to work full-time at her last job as an administrative assistant for a non-profit organization because of severe, ongoing, non-stop headaches. Nowadays, her headaches are so severe she is capable only of meeting her basic daily needs.  Her headaches can be triggered by exposure to a number of things, including food and chemicals. Since 2002, her headaches are more reactive to the environment, limiting her activities much more significantly than in 2000. She uses an alpha-wave machine on her head in the morning as a form of electrical therapy.  She also uses ice packs.  She has been on "scores and scores of drugs" but "keeps on getting ill on the migraine prevention drugs."

Plaintiff's sensitivity to the environment makes office workplaces intolerable.  She only uses unscented compounds on her body and cannot bear to be near anyone who smokes.  She uses an air purifier when she has to be in public places.

Plaintiff also has celiac disease (generalized pain, abdominal pain and bloating, and diarrhea).

Plaintiff was treated for depression by a therapist, Dale Cox.  She does not take medication to treat the depression

8  - OPINION AND ORDER

because she cannot tolerate drugs.

More recently, plaintiff has suffered from tendonitis in her right arm, carpal tunnel syndrome in the right hand, and neuropathy in her left foot.

**Lay Witness Evidence.**

In February 2007, Margarita Donnelly and Rachel Ozretich, who are friends of plaintiff, wrote separate letters in support of plaintiff's pending disability application. They variously described witnessing plaintiff's complaints of headaches and her reaction when there were chemicals or other scents and odors in the room that plaintiff is unable to tolerate. One of the witnesses questioned the results of MMPIs that suggest a diagnosis of malingering. The tenor and tone of both letters reflect the witnesses' advocacy of a favorable decision on behalf of plaintiff.

**Medical Evidence.**

Much of the medical evidence pertains to plaintiff's first application for benefits, which was denied by the Commissioner. As noted, Judge King upheld the Commissioner's ruling and Plaintiff did not appeal that decision. In setting forth the relevant medical evidence in this proceeding, I have reviewed the earlier medical evidence that informed the earlier decisions and incorporate it where relevant in my analysis even if it is not specifically repeated here.

9  - OPINION AND ORDER

**Physical Impairments - Treating Physicians.**

Karen L. Weisman, M.D. - Internal Medicine.

Dr. Weisman has treated plaintiff since November 2000 for her migraine headaches and multiple environmental and chemical sensitivities.  She relies almost exclusively on plaintiff's subjective pain complaints in making her diagnoses, which include chronic headache pain exacerbated by environmental triggers, back pain, knee pain, and celiac disease.  She sees objective manifestations of these impairments because when plaintiff visits her, she is a "mess" with increased blood pressure, sweating, and vomiting, and emotional instability.  She does not believe plaintiff is malingering because plaintiff does not engage in drug-seeking behavior.

William R. Ferguson, M.D. - Occupational Medicine.

Dr. Ferguson examined plaintiff and evaluated her medical condition in July 2000.  He noted plaintiff had a cyst in the left thyroid, tenderness across the upper back, laterally on the right elbow, and in the extensors of her right forearm and right wrist, and mild tenderness in her low back.  Plaintiff's range of motion was normal in her neck, shoulders, back, elbows, wrists, hips, knees, and ankles.

Dr. Ferguson diagnosed chronic pain syndrome with migraines, with "positive findings in all major organs, as noted."  He further stated plaintiff "is convinced she cannot do certain

things" and that "there are significant environmental factors that are impacting her migraine."  He recommended a psychological evaluation.  Finally, he opined "she probably is very focused on her body and it will be very difficult to find any gainful employment for very long for this lady."

In September 2001, Dr. Ferguson again evaluated plaintiff and opined plaintiff "has a history of headaches and inability to work based on these."

Ron Wobig, M.D. - Orthopedic Surgeon.

In February 2003, Dr. Wobig performed arthroscopic surgery to relieve plaintiff's pain arising from chondromalacia in her right knee.  In a followup examination in September 2003, he noted plaintiff continued to have mild tenderness, pain, and discomfort in her right knee.

**Physical Evidence - Examining Physicians.**

Nick C. Benton, M.D. - Otolaryngologist.
Sidney Piercey, M.D. - Neurologist.
Christopher D. Goeser, M.D. - Radiologist.

In March 2005, Dr. Benton reviewed an MRI of plaintiff's brain that revealed a left parietal 1.2 cm meningioma that was of "some concern."  Dr. Benton recommended plaintiff follow up with a neurologist. In March 2006, Dr. Piercey reviewed the brain MRI that revealed the same "small meningioma" but an otherwise normal scan.  He noted "some more left lower extremity neuropathic

complaints." He did not make any treatment recommendation but suggested that plaintiff consider nerve conduction studies if her carpal tunnel symptoms returned.

In January 2007, Dr. Piercey noted a "right median mononeuropathy at the wrist . . . consistent with carpal tunnel syndrome . . . that had progressed since June 2006." He noted "borderline findings on the left." Dr. Piercey recommended extension wrist braces" and "if symptoms progress then consider surgical release."

At the same time, Dr. Goeser reviewed an MRI of plaintiff's cervical spine that was normal except for a mild disc protusion and narrowing at C5-6.

Allan G. Brooks, M.D. Neurologist/Psychiatrist.

In July 2003, Dr. Brooks examined plaintiff for purposes of evaluating her disability claim. Dr. Brooks diagnosed a chronic head pain disorder "refractory" (i.e., resistant) to treatment. He thought physical therapy might help alleviate her headaches. Based on his physical examination, Dr. Brooks opined plaintiff has no limitations in sitting, walking, lifting, carrying, hearing, speaking, handling objects, or traveling.

Mari Goldner, M.D. - Internist, Sleep-Medicine Specialist,

Dr. Goldner examined plaintiff in November 2006 relating to a sleep disorder associated with respiratory difficulties. She

found no evidence of "significant interval change and mild upper airway resistance syndrome." Accordingly, she did "not think there was anything to pursue from the sleep front," but she would like to review "the outcome of a pulmonary workup if initiated."

**Mental Impairments - Treating Mental Health Provider.**

Dale Cox, LCSW - Therapist.

Dale Cox provided mental health therapy for plaintiff from January 2005 through at least February 2007. He diagnosed a pain disorder with psychological features. He completed a Mental Residual Functional Capacity Assessment in which he opined plaintiff has severe limitations in maintaining attention and concentration for extended periods, performing activities on a regular schedule and maintaining regular and punctual attendance, and completing a regular workday without interruptions from psychologically based symptoms. He also listed a number of other moderately severe, moderate, and mild limitations in her ability to work.

**Mental Impairments - Evaluating Psychiatrist/Psychologist.**

Galen Smolen, M.D. - Psychiatrist.

In October 2000, Dr. Smolen interviewed plaintiff and performed an MMPI-2 personality test. His diagnoses, without regard to the MMPI test results, were dysthymic disorder - early onset, chronic head, neck, spinal, and shoulder pain. He assigned a GAF score of 51 (moderate difficulty in social,

13 - OPINION AND ORDER

occupational, or school functioning). In his evaluation of the MMPI-2 test results, however, Dr. Smolen noted a "saw tooth profile, which is almost a telltale sign of malingering." Dr. Smolen opined plaintiff "was not malingering on purpose," but did so "based on the neurotic orientation of life and her psychotic thinking." He based his opinion on a consultation with a forensic psychologist. He further elaborated that the MMPI-2 test result indicated plaintiff "unconsciously manufactures physical pain to mask psychological pain. She uses projection, rationalization, and blame."

Douglas Smythe, Ph.D. - Psychologist.

In June 2003, Dr. Smythe performed a psychodiagnostic evaluation of plaintiff that included another MMPI-2 test. The test results suggested plaintiff overstated the degree of her subjective distress and that a "clinical interpretation must proceed with caution." Dr. Smythe diagnosed major depressive disorder, recurrent and severe, without psychotic features, undifferentiated somatoform disorder (provisional), and personality disorder NOS." He opined "the results of this assessment are partially, though not fully consistent with claimant (sic) allegations" and that plaintiff's "physical symptoms may have a psychic, rather than physical, origin." He suggested reconsideration of his somatoform disorder diagnosis if some physical cause was found to cause her pain.

14 - OPINION AND ORDER

## ANALYSIS

### 1.    Rejection of Plaintiff's Testimony.

Plaintiff contends the ALJ failed to give clear and convincing reasons for not crediting her testimony regarding the severity of her physical and mental impairments.  I disagree.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is not any affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements

concerning the symptoms, and other testimony by the claimant that
appears less than candid; (2) an unexplained or inadequately
explained failure to seek treatment or to follow a prescribed
course of treatment; and (3) the claimant's daily activities.
Id. at 1284 (citations omitted).

Here, the ALJ found plaintiff's medically determinable
physical and mental impairments could produce the symptoms she
alleges, but her "statements concerning the intensity, duration,
and limiting effects of these symptoms are not entirely
credible." In making this finding, the ALJ specifically relied
on the 2000 and 2003 MMPI-2 test results, from which Dr. Smolen
and Dr. Smythe, respectively, concluded plaintiff exaggerated the
extent of her pain. Although Dr. Smolen did not make a specific
finding that plaintiff was malingering on purpose, he diagnosed
malingering. Similarly, Dr. Smythe suggested caution should be
used in evaluating plaintiff because the test results suggested
she "overstated the degree of her subjective distress."

The ALJ also noted plaintiff's daily activities, including
performing household chores, cooking meals, participating in two
book clubs, and organizing a film festival, were inconsistent
with her claim of disability. Finally, the ALJ noted that
plaintiff's chronic pain complaints were long standing, yet she
was able to work in the past and go to college, where she
obtained two degrees despite her alleged pain.

On this record, I find the ALJ gave clear and convincing reasons for rejecting plaintiff's testimony as to the severity, if not the existence, of the physical impairments she contends preclude her from engaging in substantial gainful activity.

**2.   Rejection of Treating Physician Opinion.**

Plaintiff alleges the ALJ erred in rejecting the opinion of her treating physician, Karen Weisman, M.D.   I disagree.

In Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), the Ninth Circuit set forth the weight to be given to the opinions of treating doctors:

> The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

(Internal citations omitted).  In turn, "the opinions of examining physicians are afforded more weight than those of non-

examining physicians."  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th
Cir. 2007).

In 2002, 2003, and 2005, Dr. Weisman opined plaintiff was
unable to work because of chronic migraines and pain exacerbated
by environmental triggers.  The ALJ rejected Dr. Weisman's
opinion because Dr. Weisman had not performed any objective tests
to determine plaintiff's functional limitations, and, indeed,
there were no objective findings to support the extent of the
limitations suggested by Dr. Weisman.  Finally, the ALJ relied on
the two MMPI-2 test results indicating plaintiff exaggerated her
symptoms as a basis for rejecting Dr. Weisman opinion.

On this record, I find the ALJ gave clear and convincing
reasons for rejecting Dr. Weisman's opinions regarding
plaintiff's ability to work.

**3.    <u>Severity of Plaintiff's Mental Impairment</u>.**

Plaintiff asserts the ALJ erred in failing to make a finding
as to whether plaintiff suffers from a severe mental impairment.
I agree.

The court "must determine whether the ALJ had substantial
evidence to find that the medical evidence clearly established
that [the claimant] did not have a medically severe impairment or
combination of impairments."  <u>Webb v. Barnhart</u>, 433 F.3d 683, 687
(9th Cir. 2005).

The ALJ rejected therapist Dale Cox's opinion set forth in his Mental Residual Functional Capacity Assessment that plaintiff had severe limitations, _inter alia_, in maintaining attention and concentration for extended periods, performing activities on a regular schedule, maintaining regular and punctual attendance, and completing a regular workday without interruptions, all as a result of psychologically based symptoms.  The ALJ acknowledged Cox's qualifications "to accurately describe psychological conditions and make references to objective signs and indicators."  The ALJ, however, rejected Cox's opinion that plaintiff had severe functional limitations as a result of a mental impairment because the opinion was inconsistent with the results of the MMPI-2 tests performed by Dr. Smolen and Dr. Smythe.  Moreover, the opinion was based entirely on plaintiff's non-credible self-reports.

In making this finding, the ALJ ignored Dr. Smythe's evaluation that the results of the MMPI-2 test he performed suggested that plaintiff, in fact, suffers from a "major depressive disorder, recurrent and severe," regardless of whether she may have been malingering in regard to her physical impairments.

On this record, I conclude the ALJ lacked substantial evidence to find that plaintiff did not suffer from a severe mental impairment, _i.e._, major depressive disorder.

19 - OPINION AND ORDER

4.  <u>**Failure to Consider Lay Evidence**</u>.

Plaintiff alleges the ALJ failed to consider the lay evidence regarding her ability to work.  I disagree. The ALJ must take lay witness testimony as to a claimant's symptoms into account unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ, albeit in a cursory manner, did take into account the lay witness testimony regarding plaintiff's ability to work.  He stated he has "considered the third party reports." He elaborated that "[f]or the same reasons, the claimant is not credible herself, the statements of third party (<u>sic</u>) regarding any allegation of disability, even if accurate, these reports only reflect the chosen presentation by the claimant, who has demonstrated to overstate her symptoms."

I have found the ALJ gave clear and convincing reasons for not crediting plaintiff's testimony regarding the severity of her impairments.  The lay witness evidence was based on the manner in which plaintiff presented herself and not on objective evidence of her impairments.  The ALJ's finding that the plaintiff was not credible in the manner in which she subjectively presented herself was a germane reason supporting his rejection of the lay witness evidence.

20 - OPINION AND ORDER

## CONCLUSION

For all the reasons stated above, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this case for further proceedings, during which the Commissioner shall determine whether Dr. Smythe's diagnosis that plaintiff suffers from a severe major depressive disorder, that, in combination with her other severe disorders, would render her unable to engage in substantial gainful activity.

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." Gisbrecht v. Barnhart, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id.* at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs.  Massett v. Astrue, 04-CV-1006 (Brown, J.)(issued June 30, 2008).  *See also* McGraw v. Barnhart, 450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows:  If the Commissioner finds Plaintiff is

21 - OPINION AND ORDER

disabled on remand and awards Plaintiff past-due benefits and if,

as a result, Plaintiff intends to submit such application for

attorneys' fees under § 406(b), Plaintiff shall submit any such

application within 60 days from the issuance of the Notice of

Award by the Commissioner.

IT IS SO ORDERED.

DATED this 15 day of October, 2008.


　　　　　　　　　　　　　 /s/  Malcolm F. Marsh
　　　　　　　　　　　　　　　 MALCOLM F. MARSH
　　　　　　　　　　　　 United States District Judge


22 - OPINION AND ORDER